We are here on United States v. Arnett and this is 24-62-12 and we'll start with Mr. Lee. Good morning, your honors. I'm Josh Lee from the Colorado Federal Public Defender's Office and I represent Mr. Arnett. This appeal challenges the sentencing court's imposition of a four-point enhancement that applies when a firearm defendant has also committed another felony. So I've raised two plain error arguments against this enhancement and I'm going to start with the first one today and that's my argument that Mr. Arnett's alleged possession of marijuana was just a misdemeanor and not a felony. So possession of marijuana is a felony if the defendant has a prior conviction for a drug, narcotic, or chemical offense and whether Mr. Arnett has a prior drug, narcotic, or chemical offense boils down to whether Section 844C's definition of that term is applied using a factual or categorical approach. Both the plain text of 844C and this court's binding precedent require the categorical approach. Let me ask you a question about your plain error framework. Even if you could show error, you have some plainness problems, I think, and my question really goes to your reliance on Martinez, Hernandez, Herrera, Roldan. So you have the plain language of the statute argument but you're also relying on those cases and the use of the word prohibits is essentially the same as prescribes. Can you speak to why we should endorse that view of plainness? Yes, so in terms of the prohibits being the same as prescribes, I believe that this court has prior plain error decisions, for example, Venjan, that says a decision about one statute can be clearly generalizable to another statute and therefore render an interpretation of that statute, the second statute, plain. And that's what we have here. So in Martinez, Hernandez, and Herrera, Roldan, this court confronted a statute, two statutes, that defined a predicate offense as one that prohibited certain behavior. And this court said, well, the word prohibits obviously directs us to the statute of conviction. And so here we have a statute that says a predicate offense is one that prescribes behavior, prescribes is just a synonym for prohibits. It directs us to the statute of exactly the same way. It's clearly the prior decisions because prescribes just means prohibits are clearly generalizable to this new statute and therefore render the error plain. But to be frank, it would be plain even absent Martinez, Hernandez, and Herrera, Roldan, just based on the plain text of the statute. So this court has prior decisions such as the Jones case that I've cited in my brief that says the language of the statute itself can render an error plain. And just as a matter, so we've got one of two things. We're either looking to the facts or we're looking to the statute of conviction. And just as a matter of plain language, facts cannot prescribe anything. Only the criminal statute can prescribe something. So if you tried to apply the factual approach to this statute, it wouldn't make any sense. So if we say, all right, Mr. Arnett as a matter of fact previously possessed cocaine, does his possession of cocaine prescribe the possession or trafficking of a controlled substance? It doesn't. That's just not good English to say that. And I think that that's what Martinez, Hernandez, and Herrera, Roldan recognize. That's right. Can I ask you on plainness, you make a very, I think a very persuasive argument if we were addressing this first instance. But if we are to be looking at whether it is an obvious error, candidly, how did the three of us say, I mean, when you had Judge Matheson's unpublished opinion, I thought you had a good argument. Well, Judge Matheson wasn't confronted with this argument. You cited a case saying that, well, I mean, it was unpublished and the argument hadn't been presented. And then in Simmons, your office presented exactly the same argument. And as different panels said exactly the same thing as Judge Matheson's panel. So now we have six judges in our court that said, it's not only not obvious to them that you're right, but they disagree with you. So how do we say, well, Mr. Lee is obviously right. And our six colleagues who looked at, well, three of which looked at exactly, of whom looked at exactly the same argument and said, they are obviously wrong. It's sort of like crediting an argument when there was not a certificate of appealability. I mean, it's odd. Quick quibble with your question. So I think, you know, my response on Shaw, right? They didn't have it before them. All right. On Simmons, it's important that that case itself was decided on plein air review. So I don't need to show that Simmons is clearly or obviously wrong. I just need to show that it was wrong, right? But I keep doing it. I'm sorry, Mr. Lee. So I apologize to you. Forgive me. Oh, yeah. Am I wrong that Judge Timkovich said, not only is it, that it may be a stick to it, but he said it's not air. The categorical approach applies. No, he said that it's not plain. Judge Timkovich said, ultimately said it's not plain that the categorical approach applies. But regardless, Simmons actually has the exact same problem that Shaw does in that it just does not confront the existence of 844C or the fact that it defines a predicate offense as one that proscribes behavior. You know, we're looking at unpublished decisions for whether they're persuasive. And it just does not give any basis for reading proscribes in any other way than what I'm reading. Does Simmons give us anything that Shaw doesn't give us? Does Simmons build entirely off of Shaw? Simmons does build entirely off of Shaw. You know what? I think what we would be looking for in terms of persuasive authority would be some alternative way of reading Section 844C. Simmons doesn't cite or quote 844C, doesn't give us any alternative way to read it or some way to distinguish a prohibit statute from a proscribed statute. And Simmons doesn't say anything about that either. But it does say it's, he does say Simmons' arguments in analogizing 844 to seemingly parallel statutes is thus unconvincing. I don't disagree with you that he didn't address textually your argument, but he does say it's that the argument presented by your colleague is unconvincing. So, well, I'll just say that I orally argued that case, so I can't blame it on the colleague. So, I'll take responsibility for that, for not presenting it clearly enough. That said, this is where I think that Simmons goes wrong on the plainness analysis. So, what Simmons says is, hey, those were about different statutes. Like they can't show it's plain because those were about different statutes. But that's contrary to what this court has said about plain error review. And Simmons did not undertake to say, are these prohibits cases clearly generalizable to 844C? And it went wrong in not undertaking that step. And they are clearly generalizable to 844C. So, I think you sort of have, there are the problems with Shaw and Simmons that render them not persuasive, but you also have these prohibits cases are binding. They're not distinguishable from this case. And if you have binding precedential authority that you must follow, it sort of renders non-binding persuasive authority immaterial. So, I really think the order of operations should be, do we have binding precedent that requires this outcome? And from my perspective, we do. These prohibits cases are just binding and indistinguishable. And if that's the case, these ostensibly persuasive authorities just are not of any moment. That proposition, however, was not plain to the panel in Simmons, correct? What you just said. That's right. And I just think that Simmons' plainness analysis itself is not binding and is helpful to the court only to the extent that it's persuasive. And it's not persuasive for the reasons that I said. They don't offer any reasons to suppose that the words prescribes can be read to permit a factual approach. And they don't offer any basis or any cognizable basis to distinguish Martinez, Hernandez, and Herrera-Roldan. If we agree with you, would we basically be saying that the panel in Simmons were plainly wrong? In Shaw, yes. You would have to say the panel was plainly wrong because they did not have the arguments before them. Simmons itself was decided on plainness grounds. So I think you'd just have to say that Simmons conducted its plainness analysis incorrectly because it didn't. You don't have to say plainly incorrectly. They conducted it incorrectly by not recognizing that the text of the statute itself or prior decisions clearly generalizable to this one can make an error plain. I also think it's important to say that it's not a subjective test. The Supreme Court has told us plain error review is not a grading system for judges. And this court has said in McCarr that, you know, to err is human and to plainly err is also. So I think it's really more just an objective analysis. And there's no need to, like, cast dispersions on prior panels just to say that, you know, one of them didn't have the arguments before them and the other one, we disagree with how they conducted their plainness analysis. I think that's the consequence of having unpublished decisions that aren't binding and those being in conflict with published precedential decisions. Unless there are further questions, I'll reserve the remainder of my time. Judge Bacow, I believe you're muted. Oh, thank you. Sorry. Judge Murphy, did you have something to ask? I did. You know, on the the question of of constructive possession. Right. The second issue. Yeah. As I understand it, the drugs, even though the defendant said, oh, I have drugs in my car, they were sitting on the seat next to him, right? Yes. Right. And this is immediately after they had observed people coming and going out of the club to. That that didn't happen. I didn't quibble with that in the government's answer brief, because I don't think it's material to whether the judge applied the wrong standard. But it was pretty clearly established at trial that the police officer was wrong about the people coming and going. He had written in his report that he couldn't see that and said for the first time at trial in contradiction to what he'd said in his report that he saw that. Is that just a given that it didn't happen? I think it was pretty well established at trial through impeachment that it didn't. But regardless, the jury acquitted him of intent to distribute the drugs. So and the judge didn't rely on that. Right. But that doesn't mean that they also said he did not possess them. And that's a serious question. Right. I agree with that. I think it's a question for the district court applying the correct standard. So the problem is we're not saying that the judge couldn't find that he possessed under the correct standard. We're saying the judge didn't find that he possessed under the correct standard. So you're saying that there are sufficient facts from which you could infer possession and intent to possess. It's just that the district court did not make that finding. Exactly. Okay. Well, counsel, if that's your position, how do you get over the third prong of planning? So the third the third prong is not a sufficiency analysis. So the fact that the judge could find intent to possess and that it wouldn't be reversible, clear error on appeal doesn't mean that the judge would make that finding. There's a reasonable probability that the judge wouldn't make that finding for all the reasons that I've laid out in my brief. It was his girlfriend's car. His girlfriend said it was her marijuana. The judge never said that he didn't find her credible on that, etc. But even if it's not a sufficiency analysis, don't we discern whether you meet your burden to show a reasonable probability by what the evidence showed? Yes. And I think that the evidence I think that the evidence very strongly suggested that there was no intent to possess. I don't know that we would have like a clear error finding, but I feel pretty confident that by a preponderance of the evidence that there was no intent to possess. And I think that that's what the judge would find on remand. Is there any evidence? As I understand it, it was in July that she acquired the drugs. And sometime between then and February of the next year, she decided she didn't really like those drugs. Do we know when the latter occurred? Then she kind of disclaimed the drugs because she didn't like them. We know. Is there any way to measure in the record when that occurred? Um, no. What I do know is that there there was a whole bunch of garbage in the car, not just this. And she testified like, look, this was just trash that I needed to throw out and hadn't like all the other trash in my car. You know, it kind of looked like my car, I guess. All right. Do we is there any record pictures of the inside of the vehicle? Um, yes, there's body camera footage that shows the inside of the vehicle and all of the trash that was all over the car. OK, that's that's in the record on appeal. Again, though, I do think that these are all things for the district court to assess and that there's plenty of evidence to say there's a reasonable probability that the judge might not find intent to possess. And that's it was his girlfriend's car. It was her marijuana that she said that he never had anything to do with the marijuana. The judge, like, never suggested that he didn't find her testimony credible. And so it's just I think if you reach issue two, which I don't think you should, it's just a remand to the district court for him to apply the right standard. Thank you. Judge Rossman, did you have any questions? No, thank you. All right. Thank you. Give me one second. OK, we'll hear from Mr. Bond. May it please the court, Cedric Bond on behalf of the United States. I'd like to start first with this question of constructive possession. And in the court's analysis of that, the sentencing hearing, the court referred back to the testimony at trial, showing that that was established possession of this constructive possession of the marijuana. And that that's very relevant here on the question of whether there was an error at all, because at trial construct the pattern during instruction for constructive possession was what was presented to the jury. And so that is the presumption that the court applies the law correctly here is strengthened by the fact that the court was actually referring to the context where that proper standard had been applied when it was really talking about the evidence in the trial, not hearkening back to the jury instruction. So what was there about the evidence that would make it clear that he possessed these drugs and that he intended to do so? Yes, your honor, I think that that is that as the court district court said, there's there's ample evidence from the trial that did so. We have officers approaching a vehicle and as they approach, they it's they testify that it smelled strongly of marijuana. They arrive, they find the firearm under the man and he admits immediately that he that there's marijuana in the car. They confirm that they find it within an arm's reach of him in a paper bag on the seat and in a Walmart grocery sack on the floor. And this is in the testimony pages to sixty nine of the volume one through to seventy seven. And also this point wasn't actually addressed at the in the sentencing hearing other than the inference back or reference back to the testimony of trial. But there was testimony that there was actually marijuana on the firearm itself, which is a very close nexus between the firearm and the marijuana. In fact, it's approximately close as possible. And looking at some of the cases that the court applies in this standard under under the proper intent to standard. Little is a great example, although in in that context, there was a actually the wrong standard that was given to the jury. And we're actually talking in a which which makes the point that this is actually a beyond reasonable doubt question in that case rather than the preponderance finding that we're just reviewing here. And there the court then said that intent to control can be inferred from the circumstances. And in that case, even though the wrong standard was given to the jury, they found that that standard was harmless. This court found that that was harmless given the totality of the circumstances there. And noting the the time, the exclusive control of the person in the what what was there was a well house, a small little structure. And the person that comes defendant had exclusive control of it had been in there. If you're addressing my question, my concern is not about the confugality with the jury instruction and the wrong citation and the sentencing memorandum. My concern is what what evidence at trial was the district court referring to when it said harken back to the trial? That's I'm talking about evidence, not this jury instruction stuff. Yes, your honor. The if you already explained it, don't use any more of your time. OK, well, I would say that that that testimony that I referenced there is that evidence there. And then at the sentencing hearing, the court really, really pointed to Mr. Arnett's knowledge of it and the close proximity of it to him. And I think those right there provide the permissible inference that is all that is necessary for this intent to control. And and and that that should resolve that question for the court here. I'm sorry, please finish your your answer. Yeah, particularly under the plain error review of a preponderance finding. Yes, your honor. Turning to the 844 C argument, do you agree that Sean Simmons just did not have occasion to pass on the argument that the appellant presents here? I would not agree with that. The plain text of 844 has both this term and its definition. And so I would say it was before the court in Shaw. The court had that the pro se pro se appellant there did did present this argument, claiming that the categorical approach should apply, which is enough for this court to review, not just the statutory prohibition, but its definition as well. OK, so let's assume that the court had in front of it 844, all of 844 and the definition, even though I don't think the case really talks about C. Let's just spot that the statute that the appellant's argument here on the face of the statute may have been before the court in Shaw. But this argument about understanding and generalizing from our case law that talks about proscribes or prohibits to proscribes that that argument wasn't before the court in Shaw, right? I don't believe that I don't recall whether it was before the court in Shaw. It was before the court in Simmons. And I'll note that the court in Simmons did find that the Herrera-Roldan case was distinguishable and did not dictate the outcome there. And. And that's that is the right interpretation, because both Herrera-Roldan and the Martinez-Hernandez case made that that tie of the prohibits to the categorical approach at the conclusion of their analysis of the text and context of that particular statutory prohibition or provision. And so I think that that's not some shibboleth that has to be there. And if it's there, it automatically makes it requires the categorical approach. This this still requires this complex statutory interpretation and analysis of the full context of this statute A and C and their interactions together. But how can the word just just as a matter of common sense, how can the word proscribes implicate a factual approach? The way this the way I would look at this statute, if we were working off of a blank slate here, is that this this prohibition in 844A is where you'd have to start before you get to 844C. And that's, you know, except if he commits the instant offense after a prior conviction for any drug, narcotic or chemical offense chargeable under the law of any state, and thereby just drawing in all 50 states drug, chemical or drug, narcotic or chemical offenses. And and then there we move to the definition and. OK, it's it's equal to this. But can I can I start? I don't want to interrupt you, but I want to make sure I'm following you. And I think I may have lost you. So what is it in 844A that you're hanging your hand on before we get to C? I think the in 844A, we have both this broader this this term, this broader than any that I encountered in the categorical approach analysis, this drug, narcotic or chemical offense term, which is a broad term in and of itself. Then the chargeable under the law of any state that itself expands this. And then we move to the definition where it means means any offense. Which prescribes the possession of any substance that's within the Controlled Substance Act. And so I think that that's right where we get into this factual approach that we have to look at. Whether you know, as the court indicated in Simmons, whether this was actually a, you know, there is methamphetamine and offenses. And here we have met marijuana, cocaine offenses. And that's I would argue that is consistent with the statutory language or at a minimum. It's not plain from that statutory language that that has to require. And I think as the court, the panel questions earlier indicated, plainness really is the dispositive issue for this appeal. And I think it is the appropriate issue for the court to decide this one on. Because in one last thing, as far as the error, this is a substantive felony that we're talking about. It is before the court here in a plain air sentencing context where it has been used by the guidelines. But the applying the categorical approach to this trial pre-conviction setting of this felony offense here would I don't believe would be consistent with the intent of Congress, as indicated by the statutory reach of all the states. But also, it doesn't have the Sixth Amendment concerns that applied in death camp. And as as indicated by the court's Davis decision where it talks about on page 454, it discusses the the pre-conviction context and that that doesn't raise those same concerns. And also in the case where the there was the question about, well, if this if this is defined as an aggravated felony, how does that apply in the enhancement in 1326? For aggravated aggravated felonies and the Supreme Court found no constitutional issue with that because the government would have to prove beyond a reasonable doubt that it was that it met the necessary prerequisites there, the ten thousand dollar threshold. So that goes into the the reason to be cautious about approaching the plainness or the error question here. And the plainness is where it works best here. And that's it's it's very as that it would the court would be hard pressed to find plainness here where two panels of this court have not found it with this presented with the same or I would argue the same arguments. And Mr. Bond, can I ask you about that? And I don't I don't disagree. I mean, it I don't think Mr. Lee would probably disagree. It's it is a little of a challenge for the defendant to say something is obviously wrong when you have two panels, whether they evaluated under plain error or as preserved error. But to just follow up on what you said and to follow up on Judge Rossman's question and forgive me if you've already answered this, but because I do understand, I think you're presenting a very good global argument based on A and C and 844. But if we narrow down just one these three words, maybe maybe I shouldn't be taking these words in isolation, offense, which prescribes X. I really, you know, ever since I saw this case, I've been trying to figure out, well, what is the response to Mr. Lee's argument? Why did Judge Tempkowicz in that panel in Simmons find this argument unconvincing? I understand what Judge Matheson may not have because the argument wasn't presented. But what, how can, like Judge Rossman says, how can an offense which prescribes be reasonably interpreted or even conceivably interpreted to require us to look at the facts? An offense either prescribes something or it or it doesn't. I think that, you know, I don't think that, you know, when Congress passed this act, they were they were anticipating the categorical approach to apply. I think that's very clear. And and and it's also clear that they intended for this to apply to any state. And I think that that is probably some of the that plus the just overall breadth of this definition relative to the other controlled substance related offenses that have applied or have been applied. I think that that is enough to show that this that those those prohibits cases are distinguishable in this context. And I see I'm almost out of time. I have one follow up question. If if the categorical approach does apply here, does the government agree that Mr. Arnett lacks a qualified predicate? The government did not did not challenge that. I believe that Cantu would probably be dispositive there. Thank you. Judge Rossman, did you have any other questions? I don't. All right. Thank you, Mr. Lee. I apologize to you as well. It didn't do it on purpose, but I but I deprived you of your rebuttal time. But I was very well presented by both sides. Thank you both. This matter is submitted.